UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMBAC ASSURANCE CORPORATION, and SEGREGATED ACCOUNT OF AMBAC ASSURANCE CORPORATION,<br><br>       Plaintiffs,<br><br>  -against-<br><br>US BANK NATIONAL ASSOCIATION,<br><br>       Defendant. | 17-Cv-446 (SHS)<br><br>OPINION |

SIDNEY H. STEIN, U.S. District Judge.

In June 2017, the Court denied plaintiffs' motion for a preliminary injunction as well as defendant's motion to dismiss the Second Amended Complaint. Shortly thereafter, defendant U.S. Bank National Association moved for reconsideration of the Court's decision denying the bank's motion to dismiss that complaint. The bank sought reconsideration on the grounds that (1) subsequent to the denial of its motion, it determined that it should reject the proposed settlement of the New York state court action under consideration at the time of the Court's June order – on which Ambac's complaint focused in large part – and (2) the Court sustained plaintiffs' claims based on a legal theory supposedly not set forth in the pleadings. U.S. Bank thus asked the Court to reconsider and, upon reconsideration, grant the bank's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

After hearing argument in December 2017, the Court orally announced its decision to grant the motion for reconsideration and dismiss the complaint with prejudice. (*See* Order, Doc. 51.) This opinion memorializes the reasons for that decision.

I. **Background**

This action concerns defendant U.S. Bank's responsibilities as the trustee of Harborview Mortgage Loan Trust 2005–10, a residential mortgage-backed securities trust backed by loans originated by Countrywide Home Loans, Inc. Plaintiff asserts that the trust has suffered

"staggering losses" of approximately $367 million, allegedly as a result of defective loans issued by Countrywide in breach of its obligations under the trust's governing documents to take steps to verify that the borrowers were capable of repaying the loans. (SAC, Doc. 14 ¶¶ 3, 11.) As trustee, U.S. Bank sued Countrywide and its successor entities (Bank of America Corp. and Bank of America N.A.) in New York state court in 2011 for those deficiencies. On behalf of the certificateholders, U.S. Bank's state lawsuit seeks to compel Countrywide to cure or repurchase the defective loans. (*See* N.Y. Summons & Compl., Doc. 17-1 ¶¶ 134–139.) After more than six years of litigation, the parties in the New York state case reportedly completed fact discovery and had begun to exchange expert reports. (SAC ¶ 53.) In December 2016, U.S. Bank notified the certificateholders that it was considering a proposed settlement of the New York state action for $56.9 million – an estimated 15% of the trust's total losses. (*Id.* ¶¶ 64–65.)

Plaintiffs Ambac Assurance Corp. and its Segregated Account (collectively, "Ambac") issued a financial guarantee insurance policy for the benefit of certain Harborview 2005–10 certificateholders. To the extent that Countrywide does not make the certificateholders whole by repurchasing the defective loans, this insurance policy will obligate Ambac to make up any shortfalls in loan payments to the covered certificateholders – apparently, amounting to nearly $80 million. (*Id.* ¶ 4.) Ambac filed the present action in this Court on January 20, 2017, shortly after U.S. Bank notified the certificateholders that the bank was considering settling the New York state action for a fraction of the value of the alleged losses.

Less than one month after this action was commenced, U.S. Bank notified the certificateholders that it was considering an enhanced settlement offer that would further reimburse the trust for $10 million in fees and costs incurred in the New York state action. (*Id.* ¶¶ 9–10, 70.) U.S. Bank also announced its intention to commence what is known as a "trust instruction proceeding" in Minnesota state court in order to seek guidance from that court as to whether it should accept the amended proposed settlement. The bank followed through on that promise by filing such a proceeding in Minnesota's Hennepin County

District Court, Fourth Judicial District, on March 6. (*See* Minn. Pet., Doc. 41-4.) The New York state action has now been stayed by the New York Supreme Court Justice pending the resolution of the Minnesota trust instruction proceeding. (N.Y. Stay Order, Doc. 45-6.)

Ambac's Second Amended Complaint – the pleading at issue on this motion – asserts seven causes of action under New York state law:

- <u>Count I</u>: declaratory judgment that an event of default has occurred under the trust's governing documents, triggering a fiduciary duty for U.S. Bank to act as a "prudent person" on the trust's behalf

- <u>Count II</u>: declaratory judgment that accepting the amended proposed settlement would breach U.S. Bank's contractual, statutory, and common law duties

- <u>Count III</u>: declaratory judgment determining the proper procedure for U.S. Bank's prior and proposed allocation of recoveries from Countrywide

- <u>Count IV</u>: breach of contract by U.S. Bank's acceptance of the amended proposed settlement

- <u>Count V</u>: breach of contract by U.S. Bank's prior and proposed allocation of recoveries from Countrywide

- <u>Count VI</u>: breach of fiduciary duty by U.S. Bank's acceptance of the amended proposed settlement

- <u>Count VII</u>: violation of the Streit Act, N.Y. Real Prop. Law § 126(1), by U.S. Bank's acceptance of the amended proposed settlement

Although couched in different forms and invoking different sources of law, these seven claims boil down to three distinct disputes: (1) Count I raises a dispute as to whether an event of default has occurred, triggering heightened duties for U.S. Bank as trustee. (2) Counts II, IV, VI, and VII concern the question whether an acceptance in the future of the settlement by U.S. Bank would breach the bank's duties to the trust and its beneficiaries. (3) Counts III and V seek to determine that U.S. Bank's method of allocating recoveries to

certificateholders – both as practiced to date, and pursuant to any future settlement – is contrary to the trust's Pooling Agreement.

Ambac moved for a preliminary injunction to bar U.S. Bank from accepting the amended proposed settlement shortly after this complaint was filed, (Doc. 16), and the bank moved to dismiss the complaint in its entirety, (Doc. 22). As noted, this Court denied both motions in June. (Order, Doc. 36; Tr., Doc. 48).

U.S. Bank subsequently filed a motion for reconsideration of that decision. In addition to advancing legal arguments for the Court to reconsider its motion to dismiss the complaint, the bank reported an important factual development: U.S. Bank had decided that it should reject the amended proposed settlement of the New York state court action, after its own expert concluded that the proposal did not provide certificateholders reasonable compensation. (Def.'s Recons. Mem., Doc. 40 at 3.) As a result, U.S. Bank filed an amended petition in the Minnesota trust instruction proceeding seeking that court's authorization for U.S. Bank to reject the proposed settlement of the New York state action.

## II. Discussion

### A. Motion for Reconsideration Standard

The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration should be granted only when the defendant identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Such a motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998). In particular, "[f]or evidence to be considered 'newly available,' it must be 'evidence that was truly newly discovered or could

4

not have been found by due diligence.'" *United States v. Posada*, 206 F. Supp. 3d 866, 868 (S.D.N.Y. 2016) (quoting *Space Hunters, Inc. v. United States*, 500 F. App'x 76, 81 (2d Cir. 2012)). The newly discovered evidence must also be "likely to change the result of the former ruling." *Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 03 CIV. 8363, 2004 WL 626180, at *2 (S.D.N.Y. Mar. 30, 2004).

### B. Counts I, II, IV, VI, and VII Are Not Ripe.

U.S. Bank urges that Counts I, II, IV, VI, and VII should be dismissed because they are unripe for review pursuant to Fed. R. Civ. P. 12(b)(1). In particular, defendant contends that the Court erroneously held these counts to be justiciable by misconstruing the complaint as alleging a current, rather than a potential breach. Defendant is correct. In addition, U.S. Bank's own recent determination that the settlement should be rejected further confirms that these claims are not ripe for review.

"To be justiciable, a cause of action must be ripe – it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship*, 6 F.3d 867, 872 (2d Cir. 1993)). The purpose of that requirement is to "prevent[] a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). The burden to plead ripeness falls on the plaintiff. *Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 958 F. Supp. 2d 507, 518 (S.D.N.Y. 2013).

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Constitutional and prudential ripeness are "overlapping" concepts, but "are not coextensive in purpose." *Simmonds v. INS*, 326 F.3d 351, 356–57 (2d Cir. 2003). "Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the

5

judiciary," derived from Article III's Case or Controversy Clause; prudential ripeness, on the other hand, is a "more flexible doctrine" that allows judges to decide whether a case "will be *better* decided later." *Id.* at 357.

"[D]etermining whether a dispute is ripe for review requires a two-pronged analysis of (1) whether the issues presented to the district court are fit for review, and (2) what hardship the parties will suffer in the absence of review." *Connecticut v. Duncan*, 612 F.3d 107, 113 (2d Cir. 2010). Both constitutional and prudential ripeness may be assessed using this same two-step inquiry. *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 n.9 (2d Cir. 2008).

### 1. <u>Counts II, IV, VI, and VII: Acceptance of Settlement</u>

U.S. Bank accurately states that the Court's decision denying the bank's motion to dismiss mischaracterized the theory underlying Ambac's claims regarding the amended proposed settlement. Each of these claims, as made out in Ambac's Second Amended Complaint, alleges a *potential*, not a current breach of U.S. Bank's duties. Count II "seeks a declaration that U.S. Bank's acceptance of the Amended Proposed Trust Settlement *would* constitute a breach of U.S. Bank's duties." Count IV alleges that were U.S. Bank to accept the settlement, that acceptance would constitute a breach of contract that "*will* directly and proximately cause damage to the Trust and to Ambac." Count VI claims that defendant "*will* breach its fiduciary duty by failing to protect the rights of the Trust, of Ambac, and of certificateholders *if* it accedes to a settlement that gives inadequate compensation." And Count VII alleges that U.S. Bank would breach its fiduciary duties by accepting a settlement that "*will* directly and proximately cause damage to the Trust and to Ambac." (SAC ¶¶ 109, 122, 134, 141 (emphases added).) The alleged injury from each of these claims depends on U.S. Bank's *acceptance* of the settlement – an event that has not occurred and that now appears highly unlikely.

In response to the bank's motion for reconsideration, Ambac argues that U.S. Bank is "already in breach of its heightened duties" simply by *considering* an inadequate settlement, but such allegations appear nowhere in the complaint itself. The dependence of the complaint on the acceptance of the proposed settlement renders these claims unripe for

6

review under both prongs of the ripeness inquiry. The first prong of the analysis, weighing the issues' fitness for judicial decision, "is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 132 (2d Cir. 2008) (internal quotation omitted). The fact that "liability may be contingent does not necessarily defeat jurisdiction," but "courts should focus on the practical likelihood that the contingencies will occur." *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (internal quotation omitted). The parties' newfound agreement that the amended proposed settlement of the state action is inadequate and should be rejected dooms any realistic prospect of acceptance. As a result, Ambac is not entitled to have a court adjudicate a claim to review a proposed settlement that is no longer under serious consideration. Whether or not a settlement was "imminent" at the time of the complaint, Ambac cannot argue that the same is true today, given the bank's decision that the settlement should be rejected and notifying the Minnesota court of that decision.

Since there is now no practical likelihood that the settlement will be accepted, withholding judicial review will wreak no hardship on the parties. "In assessing the possible hardship to the parties resulting from withholding judicial resolution, [courts] ask whether the challenged action creates a direct and immediate dilemma for the parties. The mere possibility of future injury, unless it is the cause of some present detriment, does not constitute hardship." *Connecticut v. Duncan*, 612 F.3d 107, 115 (2d Cir. 2010) (internal quotation omitted). Once again, U.S. Bank's agreement with Ambac that the amended proposed settlement should not be accepted obviates any "direct and immediate dilemma" for the parties here.

Thus, the question whether or not the amended proposed settlement's acceptance would constitute a breach of U.S. Bank's duties does not present a live case or controversy over which a federal court may exercise jurisdiction. Given the new posture of this case, Ambac's claims related to the acceptance of the settlement fail to allege any "actual or imminent"

injury as required by Article III. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013).

   2. **Count I: Event of Default**

Count I seeks a declaratory judgment that an event of default has occurred under the trust's governing documents. The parties' disagreement here does not depend entirely on a contingency such as the acceptance of the amended proposed settlement. Rather, there is a genuine dispute between the parties as to whether an event of default has already occurred. However, even an authentic difference of legal opinion "falls outside the scope of the constitutional words 'Cases' and 'Controversies'" if it is "abstracted from any concrete actual or threatened harm." *Alvarez v. Smith*, 558 U.S. 87, 93 (2009). To meet its burden on ripeness, Ambac must "show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality" to meet the requirements of Article III. *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

This Ambac cannot do. The only immediate consequence to Ambac of the ruling it seeks – i.e., a declaration that an event of default has occurred – is the heightened duty that such a determination would impose on U.S. Bank as trustee. And that heightened standard of care will only attain concrete significance to Ambac under the current complaint if and when the trustee embarks on a future course of action that arguably breaches the heightened duty. "As a result, it is quite possible that a resolution of [plaintiffs'] current claims will not be necessary in the future," if Ambac is satisfied with U.S. Bank's ultimate resolution of the trust's affairs. *Simmonds v. INS*, 326 F.3d 351, 360 (2d Cir. 2003).

Ambac argues that "U.S. Bank should welcome" the present determination of "the yardstick against which its conduct in settlement negotiations will be measured" in the future. (Pls.' Recons. Mem., Doc. 44 at 2.) But the parties may never have need to resort to that measuring tape. It may be that U.S. Bank will take the New York state action to trial – as it did another residential mortgage-backed securities case – or that a subsequent settlement

offer will prove acceptable to Ambac and the certificateholders. *Cf.* 10B Charles Alan Wright et al., Federal Practice & Procedure § 2757 (4th ed.). And even if Ambac at some point in the future does elect to challenge a course of action U.S. Bank takes in the future, any determination by this Court that the "prudent person" yardstick is applicable now will do nothing to resolve the ultimate question of whether defendant's future conduct would fail to meet that standard.

Of course, "[e]ven if resolution of a dispute could be facilitated if a court waited for a specific application of the issues in contention, the question may, nonetheless, perhaps be justiciable under the second ripeness factor if the challenged action creates a direct and immediate hardship for the parties." *Nutritional Health All. v. Shalala*, 144 F.3d 220, 226 (2d Cir. 1998). As with the settlement-related counts discussed above, however, Ambac fails to identify any "direct and immediate dilemma," as opposed to a "mere possibility of future injury," that will result from the Court's decision not to hear its claim. *Simmonds*, 326 F.3d at 360 (internal quotation omitted). This is because there is in fact no "direct and immediate dilemma" currently posed.

The parties' present dispute as to whether an event of default has occurred does not change the fact that any injury to Ambac turns on "nebulous future events so contingent in nature that there is no certainty they will ever occur." *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) (quoting *In re Drexel Burnham Lambert Grp. Inc.*, 995 F.2d 1138, 1146 (2d Cir. 1993)). Such a contingent claim exceeds the bounds of Article III. Even if Ambac could nose its claim over the line of constitutional ripeness, prudential concerns would dictate that the Court decline to hear the case, which cannot presently come close to "settl[ing] the matter between these parties once and for all." *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 563 (2d Cir. 1991).

### C. With All Other Claims Dismissed, Counts III and V Fail to Meet the Amount-in-Controversy Requirement.

The two claims in Ambac's Second Amended Complaint not disposed of by the ripeness issue limned above are Counts III and V, which allege that U.S. Bank has breached the Pooling Agreement by improperly allocating recoveries among the trust's certificateholders. The complaint alleges that U.S. Bank's improper allocation "has caused Ambac harm because it has impacted the amount and timing of insurance claims payments Ambac has paid and deferred." (SAC ¶ 16; *see also id.* ¶¶ 92, 130.)

Because the Court grants U.S. Bank's motion to dismiss all other claims, "any damages claimed in [the dismissed] cause[s] of action must be disregarded for purposes of determining the jurisdictional amount in controversy" under Counts III and V. *Truong v. Litman*, No. 06 CIV. 1431, 2006 WL 3408573, at *4 (S.D.N.Y. Nov. 22, 2006), *aff'd*, 312 F. App'x 377 (2d Cir. 2009). Ambac now concedes that these claims, when standing alone, fail to meet the $75,000 amount-in-controversy requirement imposed on this diversity action by 28 U.S.C. § 1332(a). (Dec. 6 Tr. at 14–15.) Therefore, Counts III and V are dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for failure to meet the $75,000 jurisdictional threshold.

### D. Claims Raised in Briefing Are Not Permitted.

In its memorandum in opposition to U.S. Bank's motion for reconsideration, Ambac raised a new theory in support of its claims: namely, that U.S. Bank's past actions have already violated its duties as trustee. However, "[i]t is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15 CIV. 5432, 2016 WL 6901314, at *8 (S.D.N.Y. Nov. 18, 2016) (quoting *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y.), *aff'd*, 157 F. App'x 398 (2d Cir. 2005)). Ambac's belated assertion of a new theory of liability cannot make up for the deficiencies in the complaint assessed above. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

## III. Conclusion

For the foregoing reasons, defendant U.S. Bank's motion for reconsideration is granted and, upon reconsideration, Ambac's Second Amended Complaint is dismissed with prejudice for unripeness and for failure to meet the amount-in-controversy requirement.

Dated: New York, New York
January 17, 2018

_____
Sidney H. Stein, U.S.D.J.